UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                :
BRANDI BRODZENSKI, et al.                       :       CASE NO. 1:14-cv-2517
                                                :
        Plaintiff,                              :
                                                :
vs.                                             :       OPINION & ORDER
                                                :       [Resolving Doc. 95]
STONEMOR PARTNERS, L.P., *et al*.,              :
                                                :
        Defendants.                             :
                                                :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Brandi Brodzenski seeks to certify a Fair Labor Standards Act ("FLSA") collective action against her former employer and several affiliated entities.[1] This Court granted conditional certification.[2] Defendants StoneMor Partners, L.P., StoneMor Operating LLC, and StoneMor GP LLC ("StoneMor") have filed a motion to decertify the conditional collective action.[3] For the following reasons, the Court **DENIES** Stonemor's motion to decertify the collective action.

### I. Background

StoneMor owns and operates cemeteries across the country. From November 2007 to October 2014, Brodzenski worked in Ohio for StoneMor as a family counselor and family advisor.[4] Brodzenski alleges that she routinely worked more than forty hours a week without overtime pay. She alleges that StoneMor required employees to under-report hours worked, and that StoneMor

---

[1] Doc. 55.
[2] Doc. 65.
[3] Doc. 95.
[4] Doc. 1 at 3.

Case No. 1:14-cv-2517
Gwin, J.

would modify time sheets reporting more than forty hours.[5] On May 28, 2015, this Court granted conditional certification in this case.[6] Plaintiffs sent notice to potential class members, and 595 individuals have opted-into the conditionally certified class.[7]

## II. Standards

### A. Legal Standard

Under 29 U.S.C. § 216(b), an employee can sue on her own behalf as well as on behalf of "similarly situated" persons.

District courts use a "two-phase inquiry" to analyze whether the case presents a viable collective action.[8] In the initial stage, a district court can conditionally certify a class, allowing notice to be given to potential opt-in class members.[9] At that stage, the plaintiff must only show that "his position is similar, not identical, to the positions held by the putative class members."[10]

Following discovery and the identification of additional opt-in plaintiffs, the trial court "examine[s] more closely the question of whether particular members of the class are, in fact, similarly situated."[11] In this second stage, the Court applies "a stricter standard than the conditional certification stage because it occurs near the end of discovery."[12]

Although Defendants move for decertification, Plaintiffs have the burden to show that the

---

[5] *Id.*
[6] Doc. 65.
[7] Doc. 104.
[8] *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006).
[9] *Id.*
[10] *Id.* (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002).
[11] *Id.*
[12] *Frye*, 495 F.App'x at 671(internal quotation marks omitted).

Case No. 1:14-cv-2517
Gwin, J.

Opt-In Plaintiffs are "similarly situated" to the Named Plaintiffs.[13]

The Sixth Circuit did "not purport to create comprehensive criteria for informing the similarly-situated analysis."[14] The Sixth Circuit has identified at least three factors that district courts should consider in making final certification decisions in FLSA collective actions:

> factual and employment settings of the individual[] plaintiffs, the different defenses to which plaintiffs may be subject on an individual basis, the degree of fairness and procedural impact of certifying the action as a collective action.[15]

Plaintiffs are similarly situated when they "suffer from a single, FLSA-violating policy.[16] "Showing a unified policy is not required" and Plaintiffs can be similarly situated where "their claims [a]re unified by common theories of statutory violations, even if the proofs of these theories are inevitably individualized and distinct."[17] The similarly situated standard under the FLSA is "less stringent than the predominance inquiry" relevant to class certification disputes under Rule 23(b).[18]

### III. Analysis

Given the totality of the evidence presented, Plaintiffs have shown sufficient evidence that StoneMor imposed an unwritten, FLSA-violating policy in regards to reporting overtime. The Sixth Circuit's factor-based analysis weighs against decertification. Each factor will be addressed in turn below.

A. *Factual and Employment Settings of Individual Plaintiffs*

---

[13] *Id.* at 672.
[14] *O'Brien v. Ed Donnelly Enters., Inc.,* 575 F.3d 567, 584 (6th Cir.2009).
[15] *Id.* at 584-585.
[16] *Id.* at 585. In *O'Brien*, the Sixth Circuit found that the plaintiffs were similarly situated where "representative testimony" from some plaintiffs could facilitate proof of FLSA violations as to all.
[17] *Id.* at 584-585.
[18] *Frye*, 495 F.App'x at 672 (internal quotation marks omitted).

-3-

Case No. 1:14-cv-2517
Gwin, J.

The Court is satisfied Plaintiffs have met the burden at this stage of the proceedings to show the presence of a common issue. Therefore, this factor weighs against decertification.

First, Plaintiffs have produced 105 individualized declarations from opt-in Plaintiffs attesting to the existence of a common policy or practice that violates the FLSA.[19] Notably, these individualized declarations span 16 of the 20 states where Defendants employ counselors who have opted into the class.[20] Defendants allege that these declarations consist of insufficient, "barebones allegations."[21] However, each of the 105 declarations puts forth individualized facts as to the declarant reporting fewer hours than worked: who advised the declarant as to the policy of reporting fewer hours than actually worked; the hours reported; and the hours actually worked.[22]

Defendants point to declarations from 17 current employees. In these declarations, the employees attest that they are unaware of a policy of under-reporting.[23] These declarations are insufficient to defeat the widespread evidence of an unwritten, FLSA-violating policy as attested to in Plaintiffs' 105 declarations.

Defendants further allege that the Plaintiffs' declarations are not reliable because the underlying survey does not ask whether the supervisor instructions were consistent with company policy.[24] However, paragraph 4 of each declaration states that the supervisor in question (Sales Manager, Area Manager, or Regional Vice President) informed the declarant that "StoneMor's

---

[19] Doc. 104-1.
[20] *Id*.
[21] Doc. 106 at 10.
[22] Doc. 104-1.
[23] Doc. 106.
[24] *Id*. at footnote 3.

-4-

Case No. 1:14-cv-2517
Gwin, J.

policy was for Family Service Counselors/ Family Service Advisors to report fewer hours on their timesheets than they actually work."[25]

There is no need to scrutinize the surveys when 100% of the responding declarations directly state that StoneMor supervisors informed declarants that the under-reporting was company policy. These 105 declarations present sufficient evidence that there was an unwritten, uniform policy– communicated by supervisors to employees– of under-reporting hours at StoneMor.

Defendants point to the fact that many of the opt-in class members reported more than 40 hours a week on multiple occasions.[26] Defendants seem to infer that reporting over 40 hours on any given week is incompatible with an FLSA-violating policy of under-reporting. That is simply not the case. It is quite possible that employees reported over 40 hours of work for a given week and were still under-reporting the hours actually worked during the reported week or on other weeks. The two are not mutually exclusive.

Moreover, Plaintiff has provided deposition testimony in which the named Plaintiff and other putative opt-ins state that they were clearly instructed to under-report their hours.[27] Brodzenski testified "I was told by my manager not to put more than 40 hours on my time card."[28] Another former employee testified that under-reporting hours "was the unwritten rule."[29]

---

[25] Doc. 104-1.
[26] Doc. 106.
[27] *See, e.g.*, Doc. 61-4 at 2 ("Q: So you were told to not report more than 40 hours in a workweek even if you worked more than 40 hours? A: Yes.")
[28] *Id*.
[29] Doc. 61-6 at 3.

Case No. 1:14-cv-2517
Gwin, J.

One employee testified "we were consistently told not to record high hours."[30]

Finally, two of Defendants' former Regional Vice Presidents, Ruth Thornquest and Dave Boersema, have submitted declarations indicating that Defendant did have an unwritten, company-wide policy of encouraging a practice where "counselors would routinely underreport their hours."

Thornquest worked for StoneMor for 11 years up to 2015.[31] Boersema worked for StoneMor for 15 years up to 2015.[32] Defendants have provided declarations from the current Regional Vice Presidents denying the existence of an under-reporting policy.[33] These declarations do not defeat the substantial evidence provided by Plaintiffs which includes declarations from Thornquest and Boersema.

Both Thornquest and Boersema state that StoneMor

was aware that underreporting of hours was occurring because it received frequent employee complaints, discussed the issue on numerous conference calls, and would receive the results of random audits conducted by Human Resources indicating that underreporting was in fact occurring. In addition, StoneMor was the subject of several wage-and-hour investigations that led to the payment of back wages.[34]

Both Thornquest and Boersema explain in their declarations that StoneMor viewed the payment of "minimum wage and overtime as an indication that a counselor was not performing." As a result, Thornquest and Boersema state that StoneMor required Regional Vice Presidents to

---

[30] Doc. 61-5 at 3.
[31] Doc. 104-13.
[32] Doc. 104-14.
[33] Doc. 106.
[34] Doc. 104-13 and Doc. 104-14.

-6-

Case No. 1:14-cv-2517
Gwin, J.

"instruct Sales Managers at the various locations to 'manage' counselor overtime."[35/] Thornquest and Boersema go on to explain,

> "Managing" overtime meant encouraging sales and discouraging the reporting of large amounts of hours worked in weeks where the counselor did not ultimately make enough sales to be paid on a commission only basis.[36/]

Thus, Thornquest and Boersema describe StoneMor knowingly engaging in an unwritten practice and policy of encouraging the under-reporting of hours. These statements, taken together with the 105 declarations and the depositions already taken by Plaintiff provide enough evidence that the class members "suffer from a single, FLSA-violating policy"[37/] and thus are similarly situated.

    B. *The Different Defenses to Which Plaintiffs May Be Subject to on an Individual Basis*

Defendants argue that they are entitled to assert the retail sales exemption set forth in 29 U.S.C.§ 207(I), as a defense. Defendants believe that the application of this defense will require a "highly individualized analysis." However, this Court is not convinced that a highly individualized inquiry is necessary in order to apply this defense. Plaintiff's expert, Dr. Malcolm S. Cohen, has asserted that he has prepared estimates in similar cases. In his declaration, Dr. Cohen stated, "My estimates included persons exempt under Section 7(I) dealing with sales workers in retail trade".[38/] As such, this Court is unconvinced that this factor weighs in favor of decertification.

    C. *Degree of Fairness and Procedural Impact*

---

[35/]*Id.*
[36/]*Id.*
[37/]*O'Brien*, 575 F.3d at 585.
[38/]Doc. 104-11.

Case No. 1:14-cv-2517
Gwin, J.

The third factor requires the Court to consider "'the degree of fairness and procedural impact of certifying the action as a collective action."[37] " A collective action allows...plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources."[36] Moreover, "the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory."[37] Because this Court finds that the class members are similarly situated, this factor weighs against decertification.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendants StoneMor's motion to decertify the collective class certification.

IT IS SO ORDERED.

Dated: August 26, 2015                    s/          *James S. Gwin*
                                          JAMES S. GWIN
                                          UNITED STATES DISTRICT JUDGE

---

[37] *Id*.
[36] Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).
[37] *Id*. at 170.